LEWIS POWELL, Indiv. and as Member of Menard Electric Cooperative, *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. ROBERT E. GANT *et al.*, Defendants-Appellees and Cross-Appellants (Royal B. Newman *et al.*, Defendants; Western Illinois Electric Cooperative *et al.*, Nominal Defendants).

Fourth District   No. 4—89—0820

Opinion filed June 21, 1990.—Rehearing denied August 3, 1990.

Thomas F. Londrigan, of Londrigan, Potter & Randle, P.C., of Springfield, for appellants.

Monroe, Wilson, Dyar, Moss & Statzer, of Decatur (Thom Moss and Darrell E. Statzer, Jr., of counsel), for appellees Edward Williams *et al.*

Heyl, Royster, Voelker & Allen, of Peoria (Richard N. Molchan, Roy O. Gulley, Karen L. Kendall, and David L. Garner, of counsel), for appellees Robert E. Gant *et al.*

JUSTICE STEIGMANN delivered the opinion of the court:

In August 1987, plaintiffs, Lewis Powell *et al.*, filed a two-count complaint against the present and former officers and directors of Soyland Power Cooperative, Inc. (Soyland), and Western Illinois Power Company (WIPCO), alleging breach of fiduciary duty. Count I of the complaint was designated as a double derivative action, while count II of the complaint was designated as a class action. On defendants' motions, the trial court dismissed plaintiffs' complaint due to insufficient pleadings and granted them leave to amend. Plaintiffs then filed an amended complaint, but in September 1989, the trial court dismissed plaintiffs' amended complaint with prejudice.

On appeal, plaintiffs challenge the trial court's dismissal of their amended complaint with prejudice, claiming their pleadings were sufficient. On cross-appeal, defendants argue that the trial court erred in holding that plaintiffs had standing to bring a double derivative action against them.

Before we proceed with the rest of our opinion, we note that upon review of the record before this court on appeal, we find that the trial court made no mention of count II of plaintiffs' complaint or amended complaint in either of its memorandum orders. Thus, we are unsure of the trial court's disposition of this count. In any event, because count II is not on appeal before this court, we will proceed with our analysis only with respect to count I.

### GENERAL BACKGROUND

The plaintiffs in the present lawsuit are members of 22 electrical distribution cooperatives, which, in turn, are members of either the Soyland or WIPCO generating and transmission electrical cooperative. Seven of the 22 electrical distribution cooperatives are members

of WIPCO. Fifteen are members of Soyland. All cooperatives are organized under Illinois law as not-for-profit corporations. The directors of each distribution cooperative are elected at meetings of that cooperative. Then each distribution cooperative elects two members of its board to serve as directors for either Soyland or WIPCO.

In August 1976, Soyland and WIPCO entered into an ownership participation agreement with Illinois Power Company (IP), which provided for the sharing of certain costs in the construction of a nuclear power station in Clinton, Illinois. Pursuant to that agreement, IP would have control of construction and would also be the majority owner of the Clinton Power Station (Station), but WIPCO and Soyland would also participate in ownership, with an approximate combined share of 20%. Originally, the Station was designed for and planned to include two nuclear reactors. Presently, however, only one reactor is in operation.

Subsequent to the execution of that agreement, the costs associated with the construction of the Station increased. Because of difficulty in raising the necessary funds, Soyland and WIPCO negotiated with IP to allow them to lessen their investment in the Station, with the result that once a certain investment limit had been reached, the respective ownership shares of Soyland and WIPCO would decrease.

Presently, the Station is on-line, providing electricity to its owners (IP, Soyland, and WIPCO) so they, in turn, can provide it to customers and member distribution cooperatives. Soyland and WIPCO also currently possess "as if owned" shares in fossil-fuel generating plants of IP.

Plaintiffs first brought suit naming Soyland and WIPCO as nominal defendants in a derivative action against IP. Soyland and WIPCO then asked to be realigned as party plaintiffs to pursue the claim against IP. The trial court granted the request. On appeal, this court affirmed. *Powell v. Western Illinois Electric Cooperative* (1989), 180 Ill. App. 3d 581, 536 N.E.2d 231.

### ORIGINAL COMPLAINT

On August 5, 1987, plaintiffs instituted a second suit against certain directors and officers of WIPCO and Soyland, and against member cooperatives as nominal defendants, claiming that certain directors and officers of Soyland and WIPCO breached their fiduciary duties in failing to bring a corporate action against IP. More specifically, plaintiffs claimed that the directors of Soyland and WIPCO failed to inform themselves of certain facts causing alleged cost overruns; failed to make demand on IP to explain such cost overruns;

failed to demand that IP contain such cost overruns; failed to take action against third parties (who were unnamed in the complaint); failed to adequately monitor the progress of construction at the Station; executed a release without obtaining sufficient information; failed to obtain adequate consideration for the release; ignored the fact that an investigation was occurring on behalf of the Illinois Commerce Commission; failed to void the releases; criticized the audits performed on behalf of the Illinois Commerce Commission; and concealed information from plaintiffs.

In their complaint, plaintiffs did not allege demand upon present management to pursue claims against its own officers and directors. Instead, they alleged that such demand was futile, stating:

"[T]he present officers and directors of WIPCO and Soyland are antagonistic to the valid claims asserted herein and any demand upon them to pursue claims against past and present officers and directors would be futile."

Defendants then filed motions to dismiss on several grounds, including (1) plaintiffs' failure to allege that demand was made on WIPCO and Soyland to pursue a claim against them as officers and directors, and (2) plaintiffs' lack of standing to bring suit against them.

The trial court dismissed plaintiffs' complaint, ruling:

"Even read in a light most favorable to the plaintiff, it [the complaint] fails to allege either a demand upon the directors or a sufficient reason to excuse such a demand. Whether or not the plaintiffs can allege such facts is not for the Court to determine at this stage of the litigation. Plaintiffs will be granted 28 days to file an amended complaint."

In allowing plaintiffs to plead over, the court stated the following:

"A plaintiff may establish futility of demand by creating a reasonable doubt that the directors are disinterested and the challenged transaction was otherwise the product of a valid exercise of business judgment. A review of the complaint filed herein fails to establish that a reasonable doubt exists at present as to these facts."

In regard to the standing issue, the court ruled:

"Having reviewed *Brown v. Tenney* and the material cited therein, I am of the opinion and find that this action may be maintained by the plaintiffs. *** A double directive action may be maintained by a shareholder of record in a holding company, on behalf of a subsidiary controlled or dominated by the holding company, assuming that certain other requirements are met."

## AMENDED COMPLAINT

On June 12, 1989, plaintiffs filed an amended complaint. Again, the complaint consisted of two counts, one a double derivative action and the other a class action. As did the first complaint, the amended complaint also relied on the futility of demand and alleged that both past and present officers and directors were guilty of mismanagement and *ultra vires* acts in delegating away fiduciary duties to IP. In addition, the complaint alleged that management's conduct was not based upon business judgment as a matter of law.

Defendants filed motions to dismiss the amended complaint, alleging, *inter alia*, that the plaintiffs had failed to make or plead demand, had failed to plead futility of demand, and lacked standing to bring a double derivative action. Additionally, defendants moved to dismiss on the ground that certain defendant directors were immune from suit pursuant to section 108.70 of the General Not For Profit Corporation Act of 1986 (Ill. Rev. Stat. 1989, ch. 32, par. 108.70).

## FINAL ORDER

On September 20, 1989, the trial court dismissed plaintiffs' amended complaint "with prejudice," stating:

> "Because Plaintiff concedes in its argument that it cannot meet the legal requirements that the Court believes are applicable in order to state a cause of action, this dismissal should be and is a dismissal with prejudice.
>
> * * *
>
> * * * In the instant case, it is now clear to the Court from the arguments of counsel that 'demand' or 'futility of demand' cannot be established, and for that reason the Complaint must be dismissed."

## ANALYSIS

The Illinois Supreme Court recently addressed the issue of standing to bring a double derivative cause of action in *Brown v. Tenney* (1988), 125 Ill. 2d 348, 532 N.E.2d 230.

■■ In *Brown*, the supreme court held that a double derivative action could only be filed under certain conditions:

> "[W]e hold that a double derivative action may be maintained by a shareholder of record in a holding company, on behalf of a subsidiary controlled or dominated by the holding company, after due demand is made to, and rejected by, the subsidiary and the holding company." (*Brown*, 125 Ill. 2d at 361, 532 N.E.2d at 235-36.)

Thus, in order for plaintiffs to have standing to bring count I of their complaint against defendants, plaintiffs must be (1) shareholders of record in a holding company, (2) suing on behalf of a subsidiary controlled or dominated by the holding company, and (3) bringing the action after demand is made to and rejected by both the subsidiary and holding company.

Upon an in-depth study of the record and applicable case law, we find that plaintiffs have not met requirements (1) and (3) and, accordingly, should not be allowed to bring a double derivative action against defendants. Because of this finding, we need not address the second requirement of *Brown*.

### BROWN'S FIRST REQUIREMENT

In order to bring this action against defendants, plaintiffs must first be shareholders of record in the company that controls or dominates the company that possesses the alleged cause of action. (*Brown*, 125 Ill. 2d at 361, 532 N.E.2d at 236.) This status must exist at the time of the transaction complained of and be maintained throughout the pendency of the action. *Lower v. Lanark Mutual Fire Insurance Co.* (1986), 151 Ill. App. 3d 471, 473, 502 N.E.2d 838, 840.

In the present case, plaintiffs have not met this requirement. Nowhere in plaintiffs' complaint or amended complaint do plaintiffs assert that they are shareholders of record in Soyland or WIPCO. In addition, while plaintiffs may be shareholders of record in their respective distribution cooperatives, they have not alleged that the distribution cooperatives dominate or control WIPCO or Soyland.

### BROWN'S THIRD REQUIREMENT

In regard to the third requirement set forth in *Brown*, plaintiffs argue that because demand was made of the distribution cooperatives or, in the alternative, that demand was excused because of futility, their amended complaint should not have been dismissed. Defendants argue that no facts were pleaded in support of either argument. We agree with the defendants.

Whether the demand requirement is excused is within the trial court's discretion. (*Haberman v. Washington Public Power Supply System* (1987), 109 Wash. 2d 107, 153, 744 P.2d 1032, 1063.) Thus, a trial court's determination of whether demand is excused will only be reversed for a manifest abuse of discretion. *Haberman*, 109 Wash. 2d at 153, 744 P.2d at 1063.

In a double derivative action, a plaintiff shareholder must make demand twice, once of the subsidiary company and once of the

holding company. (*Brown*, 125 Ill. 2d at 361, 532 N.E.2d at 235-36.) The demand requirement is intended to allow the corporation an opportunity to take over a suit brought on its behalf. In the alternative, the doctrine of futility excuses demand on directors when the majority of the directors are the alleged wrongdoers. A plaintiff may establish futility of demand by creating a reasonable doubt that the directors are disinterested and that the challenged transaction was otherwise the product of a valid exercise of the business judgment. (*Aronson v. Lewis* (Del. Super. Ct. 1984), 473 A.2d 805, 814.) It is well established, however, that this futility is not established by mere approval or acquiescence by a corporation. *Haberman*, 109 Wash. 2d at 154, 744 P.2d at 1063.

■■ Plaintiffs argue that because they named all the directors of WIPCO and Soyland in their complaint, this proves that they created a reasonable doubt that the directors are disinterested. However, the fact that the plaintiff in a shareholder derivative action named all of the corporation's directors as defendants does not excuse his failure to make demand on the board of directors as required by the rule. *Lewis v. Graves* (2d Cir. 1983), 701 F.2d 245, 249.

■■ The record reveals that neither of these requirements was met. In paragraph 10 of count I of plaintiffs' amended complaint, the majority of the allegations of demand were not upon Soyland or WIPCO, but rather upon the member cooperatives. We note that no demand was made on Shelby Cooperative. In fact, only subparagraphs (m) and (n) of paragraph 10 of the amended complaint relate in any way to demands made upon WIPCO or Soyland. In subparagraph (m) plaintiffs claim that, "Members of rural electric convenience cooperatives demanded that WIPCO make changes to the agreement with [IP] and also asked to be released from said agreement." In subparagraph (n), plaintiffs claim that they made a demand on certain individuals who happen to be managers of Soyland and WIPCO to take immediate action against IP regarding the Station. Nowhere in their complaint do plaintiffs claim that they ever made demand upon any of the board of directors of either Soyland or WIPCO to take action against certain directors of the boards for alleged wrongdoing.

Thus, based upon the record before this court, plaintiffs did not meet the third requirement set forth in *Brown*. They demanded of their distribution cooperatives to sue IP. Demand to sue IP is not the same thing as demand to sue directors and officers. In addition, plaintiffs made no demand on WIPCO or Soyland, nor did they establish futility of demand. The trial court did not abuse its discretion in finding plaintiffs' amended complaint insufficient. on its facts to state a

cause of action against defendants.

For the reasons stated, we affirm the trial court's order to dismiss plaintiffs' complaint with prejudice.

Affirmed.

KNECHT, P.J., and SPITZ, J., concur.