**Ethel HICKS, et al., derivatively on behalf of UNION PACIFIC CORPORATION,**

v.

**Drew LEWIS, et al.**

Court of Appeals of Tennessee, Western Section, at Jackson.

May 19, 2003 Session.

Oct. 7, 2003.

Permission to Appeal Denied by Supreme Court April 5, 2004.

Mary L. Wolff and Katherine L. Frazier, Memphis, Tennessee; William S. Lerach, Travis E. Downs, III, James R. Hail, and Mary K. Blasy, San Diego, California; George E. Barrett, Douglas S. Johnston, Timothy L. Miles, and James G. Stranch, III, Nashville, Tennessee, for the appellants, Ethel Hicks, et al.

Leo Bearman, Jr., Memphis, Tennessee, for the appellees, Drew Lewis, Richard K. Davidson, Philip F. Anschutz, E. Virgil Conway, Thomas J. Donohue, Archie W. Dunham, Spencer F. Eccles, Ivor J. Evans, Elbridge T. Gerry, Jr., Judith Richards Hope, Richard J. Mahoney, James Robinson, III, Steven R. Rogel, Richard D. Simmons, and Ernesto Zedillo Ponce de Leon.

Robin Rasmussen, Cordova, Tennessee, for the appellees, Leo H. Suggs, James D. Douglas, Robert Cecil, Mike Eastman, Joe Jasmer, Richard Pair, Jeff Seegert, Donald Tuggle, and Dwayne Williams.

Clifford Pierce, Jr., Memphis, Tennessee, for the nominal appellees, Union Pacific Corporation and Overnite Transportation Company.

## OPINION

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

This is a shareholders derivative action. The plaintiff shareholders sued the defendant Utah corporation and its board of directors and officers, claiming that the defendants' unlawful labor violations caused financial damage to the corporation of approximately $1 billion dollars. The defendants moved to dismiss because the plaintiffs failed to make a pre-suit demand on the corporation to take corrective action, as is required under Utah law. The plaintiffs asserted that the law of Tennessee applied, and that under Tennessee law, a pre-suit demand is not required when making such a demand would be futile. The trial court granted the defendants' motion to dismiss, applying the law of Utah. The plaintiffs now appeal. We affirm, finding that the law of the state of incorporation applies to issues related to the pre-suit demand requirement and that, under the law of Utah, the plaintiffs' failure to make a pre-suit demand on the

corporation mandates dismissal of the lawsuit.

Union Pacific Corporation ("Union Pacific"), which operates Union Pacific Railroad, was incorporated under the laws of Utah. Overnite Transportation Company ("Overnite"), a trucking company, is a wholly owned subsidiary of Union Pacific.

On June 21, 2001, the Plaintiffs/Appellants, shareholders of Union Pacific (collectively, "plaintiffs"), filed this derivative action on behalf of Union Pacific, asserting claims of breach of fiduciary duty and abuse of control against the Board of Directors of Union Pacific and certain officers and managers of its subsidiary, Overnite (collectively, "defendants").[1] In the lawsuit, the plaintiffs alleged that, in 1994 and 1995, when Overnite employees attempted to unionize, the defendants engaged in an intense campaign of illegal labor activity against the Overnite employees in order to prevent unionization. The defendants allegedly committed egregious and pervasive violations of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* ("NLRA"), that caused Union Pacific to incur a substantial amount of financial loss.[2] Many of the alleged unlawful acts of which the plaintiffs complain took place in Tennessee. The plaintiffs asserted that, in lawsuits arising out of the illegal labor activity, Overnite paid over $3 million in settlements and untold amounts in attorney's fees. The plaintiffs also assert that, as a result of the defendants's actions, Union Pacific's investment in Overnite has been impaired by $900 million,[3] and Union Pacific has spent millions of additional dollars in legal fees and related costs.

On July 31, 2001, the defendants moved to dismiss the complaint, based on the plaintiffs' failure to make a pre-suit demand on the corporation. On July 1, 2002, the trial court granted the motion to dismiss, finding that failing to make a pre-suit demand was fatal to the plaintiffs' claim under the Utah Demand Statute, Utah Code Annotated § 16–10a–740 ("Utah Demand Statute"). The Utah statute provides:

16–10a–740 Procedure in derivative proceedings.

(3)(a) A shareholder may not commence a derivative proceeding until:

(i) a written demand has been made upon the corporation to take suitable action; and

(ii) 90 days have expired from the date the demand described in Subsection (3)(a)(i) is made unless:

(A) the shareholder is notified before the 90 days have expired that the demand has been rejected by the corporation; or

(B) irreparable injury to the corporation would result by waiting for the expiration of the 90–day period.

(b) A complaint in a derivative proceeding shall be:

(i) verified; and

(ii) allege with particularity the demand made to obtain action by the board of directors.

---

1. The plaintiffs brought the action on behalf of Union Pacific and Overnite; thus, Union Pacific and Overnite are named as nominal defendants.

2. In their brief before this Court, the plaintiffs detail the numerous alleged NLRA violations committed by the defendants. In light of the issues in this appeal, however, the details of the alleged violations need not be discussed in this Opinion.

3. The plaintiffs alleged that the defendants' illegal course of conduct caused Overnite's worth to decline from the $1.2 billion Union Pacific paid for the company in 1987 to $300 million as of the date of the complaint.

(c) A derivative proceeding shall comply with the procedures of Utah Rules of Civil Procedure, Rule 23.1.

Utah Code Ann. § 16–10a–740(3)(a)–(c) (2002). The trial court concluded that it was obligated to apply the substantive laws of Utah to the issues pertaining to the requirement for a pre-suit demand, because (1) Tennessee's "internal affairs" doctrine provides that claims involving the internal affairs of a corporation must be resolved by applying the law of the state of incorporation; and also because (2) issues involving the requirement of a pre-suit demand are substantive in nature and are, consequently, governed by the substantive law of the state of incorporation. Applying the plain language of the Utah statute, the trial court concluded that a pre-suit demand was required and that the plaintiffs' failure do to so was fatal to their claim. The plaintiffs now appeal that decision.

On appeal, the plaintiffs argue that the trial court erred in applying Utah substantive law to the demand requirement, and in ignoring the corresponding Tennessee statute, Tennessee Code Annotated § 48–17–401 ("Tennessee Demand Statute"). They maintain that the Tennessee statute expressly permits a Tennessee shareholder to file a derivative action on behalf of a foreign corporation without a pre-suit demand, provided they plead that such a pre-suit demand would have been futile. Therefore, based on Tennessee's "futility exception" to the demand requirement, the plaintiffs contend, their failure to make a pre-suit demand on Union Pacific was not fatal to their claim. In the alternative, the plaintiffs contend that, even if the substantive law of Utah applies to the issue of whether a pre-suit demand was required, the trial court erred in holding that Utah law required such a demand in this case.

■ This appeal presents questions of law relating to the application of the pre-suit demand requirement and the futility exception as set forth in Tennessee and Utah statutes and pertinent caselaw. Consequently, this appeal involves only issues of law, and we review the trial court's conclusions *de novo*, with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn.1997) (stating that questions of law are reviewed *de novo* ); *State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle,* 63 S.W.3d 734, 754 (Tenn.Ct.App.2001) (stating that issues of statutory construction are questions of law and, therefore, reviewed *de novo* ); Tenn. R.App. P. 13(d).

The plaintiffs first argue that the trial court erred in ignoring the express language in the Tennessee Demand Statute, which they contend is applicable to derivative proceedings filed on behalf of a "foreign corporation." The Tennessee Demand Statute provides:

**48–17–401. Procedure in derivative proceedings.**—(a) A person may not commence a proceeding in the right of a domestic *or foreign corporation* unless the person was a shareholder of the corporation when the transaction complained of occurred or unless the person became a shareholder through transfer by operation of law from one who was a shareholder at that time.

(b) A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored *or why the person did not make the demand* ....

Tenn.Code Ann. § 48–17–401(a)–(b) (2002) (emphasis added). The plaintiffs argue that the language of this Tennessee statute implies that derivative plaintiffs may com-

mence an action without first making a demand. Indeed, Tennessee courts recognize a "futility exception" to the general demand requirement, excusing the pre-suit demand if such demand would be futile because the corporation's Board of Directors is not disinterested or not independent. *See Lewis ex rel. Citizens Sav. Bank & Trust Co. v. Boyd*, 838 S.W.2d 215, 221 (Tenn.Ct.App.1992) ("Tennessee courts have recognized ... that the demand requirement should be excused if making the demand would be an 'idle ceremony.' "). The plaintiffs argue that Tennessee's futility exception should apply in this case based on the express reference in section 48–17–401 to suits brought on behalf of a "foreign corporation."

We first address whether Tennessee Code Annotated § 48–17–401, by its own terms, should apply in this case. In construing this statute, we must "ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. State Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn.1993). If a statute is without ambiguity, we must apply the statute as written; we are not "at liberty to depart from the words of the statute." *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802–03 (Tenn.2000). Furthermore, "[s]tatutes relating to the same subject or sharing a common purpose must be construed together (*in pari materia*), 'in order to advance their common purpose or intent.' " *Frye v. Blue*

*Ridge Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 716 (Tenn.2002) (quoting *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997)); *see LensCrafters, Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn.2000). Thus, we seek to construe the statutes so as to advance the intent of the legislature and arrive at the most harmonious result possible. *Frye*, 70 S.W.3d at 716.

The plaintiffs cite no controlling authority to support their position that, by the inclusion of the term "foreign corporation" in the Tennessee Demand Statute, the Tennessee statute should apply in this case;[4] rather, they rely simply on the plain language of the statute.[5] Tennessee has long adhered to the "internal affairs" doctrine, under which matters involving the internal affairs of a foreign corporation are deemed substantive in nature and "should be resolved in accordance with the law of the state of incorporation." *See Bayberry Assocs. v. Jones*, No. 87–261–II, 1988 WL 137181, at *4 (Tenn.Ct.App. Nov.9, 1988), *vacated on other grounds*, 783 S.W.2d 553 (Tenn.1990); *see Amberjack, Ltd. v. Thompson*, No. 02A01–9512–CV–00281, 1997 WL 613676, at *8–*9 (Tenn.Ct.App. Oct.7, 1997) (following the "internal affairs" doctrine as described in *Bayberry* ). The General Assembly implicitly recognized the internal affairs doctrine in Tennessee Code Annotated § 48–25–105(c), which provides that Tennessee's corporation statutes "do not authorize this state to regulate the organizational or in-

---

**4.** The plaintiffs argue that the caption of section 48–17–401 shows that the pre-suit demand requirement is procedural in Tennessee, because it states that the statute pertains to "[p]rocedure in derivative proceedings." Clearly, however, the caption is not conclusive as to whether issues is substantive or procedural.

**5.** The plaintiffs cite *Lewis* and *Burns* to support their position, but those cases merely establish that Tennessee, in fact, recognizes a

futility exception to the demand requirement; they do not involve a foreign corporation as a defendant. *See Lewis*, 838 S.W.2d at 218 (noting that the subject corporation was organized in Tennessee); *Burns v. Nashville*, 142 Tenn. 541, 221 S.W. 828 (Tenn.1920) (suit brought against city of Nashville, Tennessee). The plaintiffs cite no post-*Kamen* decisions applying the law of the forum state, rather than the law of the state of incorporation, to the demand requirement issue.

ternal affairs of a foreign corporation authorized to transact business in this state." *See id.* at *5 (stating that section 48–25–105(c) is the General Assembly's implicit recognition of the internal affairs doctrine as a choice of law rule in Tennessee). The United States Supreme Court discussed the pre-suit demand requirement in *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), a case decided under the Investment Company Act ("ICA"). In *Kamen*, the Court concluded that the substantive law of the state of incorporation governs the scope of the demand requirement and any exception to the requirement.[6] 500 U.S. at 108–09, 111 S.Ct. 1711. The Court stated:

> The purpose of the demand requirement is to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right. Ordinarily, it is only when demand is excused that the shareholder enjoys the right to initiate suit on behalf of his corporation in disregard of the directors' wishes. In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of substance, not procedure. Thus, in order to determine whether the demand requirement may be excused by futility in a derivative action founded on § 20(a) of the ICA, we must identify the source and content of the substantive law that defines the demand requirement in such a suit.

*Id.* at 96–97, 111 S.Ct. 1711 (citations, footnote, and quotations omitted). Finding that the demand doctrine is a matter of substance, not procedure, the Court concluded that a federal court considering a derivative lawsuit under the ICA "must apply the demand futility exception as it is defined by the law of the State of incorporation." *Id.* at 108–09, 111 S.Ct. 1711. *Kamen* has been widely followed, with many courts adhering to *Kamen's* holding that "whether the failure to make a demand is excused must be determined under the substantive law of the state of incorporation." *McCall v. Scott*, 239 F.3d 808, 815, *as amended*, 250 F.3d 997 (6th Cir.2001); *see In re Abbott Labs. Derivative S'holder Litig.*, 325 F.3d 795, 804 (7th Cir.2003); *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir.2000); *Dollens v. Zoints*, No. 01 C02826, 2002 WL 1632261, at *4 (N.D.Ill. July 22, 2002); *Rales v. Blasband*, 634 A.2d 927, 932 n. 7 (Del.1993).

In light of Tennessee's internal affairs doctrine, as well as other pertinent caselaw holding that the pre-suit demand requirement is a matter of substance, we conclude that the plaintiffs' interpretation of section 48–17–401—which would result in the application of Tennessee law to the internal affairs of a foreign corporation—was not the interpretation intended by the legislature. Section 48–17–401 must be construed *in pari materia* with section 48–25–105(c); both statutes were promulgated contemporaneously. Construing section 48–17–401 in the manner suggested by the plaintiffs is irreconcilable with the internal affairs doctrine and with the explicit language in section 48–25–105(c), prohibiting

**6.** Until *Kamen*, some federal courts had applied federal common law to issues involving the demand requirement and possible exceptions thereto in cases brought pursuant to the federal Investment Company Act. *Kamen*, 500 U.S. at 94–95, 111 S.Ct. 1711. The main impact of *Kamen*, then, was that, even in cases brought pursuant to the federal Act, courts should still look to the substantive law of the state of incorporation with respect to matters of demand futility. *See id.* at 108–09, 111 S.Ct. 1711; *see also Werbowsky v. Collomb*, 362 Md. 581, 766 A.2d 123, 134 n. 3 (2001).

the State from regulating the internal affairs of a foreign corporation. Moreover, in *Kamen,* the Court clearly held that issues relating to the demand requirement and the futility exception are matters of substance and should be resolved according to the law of the state of incorporation, here, the laws of Utah. *Kamen,* 500 U.S. at 108–09, 111 S.Ct. 1711.

■ The plaintiffs further argue that Tennessee "long ago abandoned wooden adherence to the so-called internal affairs doctrine in conflicts of law analysis for the modern 'significant relationship test' embodied in the Restatement (Second), Conflict of Laws (1971)." Brief at 14. They assert that, under the most significant relationship test, Tennessee courts should apply the substantive law of the state "with the more significant relationship to the occurrence and the parties" to the substantive issues of law. *See Hataway v. McKinley,* 830 S.W.2d 53, 54 (Tenn.1992) (applying "most significant relationship" test to determine which state's substantive law would apply to the wrongful death claim). In *Bayberry Assocs.,* this Court cited with approval the Restatement (Second), on which the plaintiffs rely, noting the significant relationship exception to the internal affairs doctrine:

> The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and stockholders, ***except***

***where, with respect to the particular issue, some other state has a more significant relationship*** under the principles stated in § 6[7] to the parties and the transaction, in which event the local law of the other state will be applied.

Restatement (Second), Conflict of Laws § 309 (1969) (quoted in *Bayberry Assocs.,* 1988 WL 137181, at *4 (emphasis added)). Thus, under the Restatement, the law of the state of incorporation applies to the substantive issues in derivative actions "except where, with respect to the particular issue," another state has a more significant relationship. *Id.* The plaintiffs argue that, in this case, Tennessee has a more significant relationship to the issues, because the wrongful conduct committed by the defendants occurred in Tennessee. Therefore, they argue, the substantive law of Tennessee should apply to all substantive issues, including those relating to the demand requirement.

Even assuming that the significant relationship test applies, however, the application of Tennessee's futility exception to the demand requirement is not mandated. "[T]he demand requirement delineates the respective powers of the shareholder and the directors." *Silver v. Allard,* 16 F.Supp.2d 966, 968–69 (N.D.Ill.1998). Clearly, the state of incorporation has a unique interest in regulating the relationship between the shareholders and the directors, and each jurisdiction "differ[s]

---

7. "The Restatement (Second) of Conflict of Laws § 6(2) provides that in the absence of a statutory directive to the contrary, the factors relevant to the choice of the applicable rule of law include
    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of the interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied."
*Bayberry Assocs.,* 1988 WL 137181, at *4 n. 7 (quotation omitted).

widely in defining the circumstances under which demand on directors will be excused." *Kamen,* 500 U.S. at 101–02, 111 S.Ct. 1711 (quotation omitted). After a thorough review of the applicable case law, this Court has found no case decided after *Kamen* applying the substantive law of any state other than the state of incorporation to issues relating to the demand requirement. Under these circumstances, we must conclude that, even applying the significant relationship test, the state of incorporation, here, Utah, has the most significant relationship to issues surrounding the pre-suit demand requirement.

■ The plaintiffs argue in the alternative that, even if the law of Utah applies, the trial court erred in finding that Utah does not have a futility exception to the pre-suit demand requirement. The plaintiffs assert that the Utah Demand Statute contemplates a futility exception through its requirement that all derivative proceedings must comply with Rule 23.1 of the Utah Rules of Civil Procedure.[8] *See* Utah Stat. Ann. § 16–10a–740(3)(c). Rule 23.1 provides that the complaint filed in a derivative action must allege with particularity "the efforts, *if any,* made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and *the reasons for his failure to obtain the action or for not making the effort.*" Utah R. Civ. P. 23.1 (emphasis added). The plaintiffs reason that, because Rule 23.1 is incorporated by reference into the Utah Demand Statute, and because the Rule implies that a pre-suit demand is not necessary where the complaint states "the reasons . . . for not making the effort," then Utah law, in fact, contains a futility exception. This argument, however, was made and rejected in *Kamen.* In considering Rule 23.1 of the Federal of Civil Procedure, identical in all pertinent respects to the Utah counterpart, the United State Supreme Court in *Kamen* opined that, "although Rule 23.1 clearly *contemplates* both the demand requirement and the possibility that demand may be excused, it does not *create* a demand requirement of any particular dimension." *Kamen,* 500 U.S. at 96, 111 S.Ct. 1711. Therefore, under the reasoning in *Kamen,* we must reject the plaintiffs' assertion that the Utah Demand Statute incorporates a futility exception. Accordingly, we affirm the trial court's conclusion that, under the Utah Demand Statute, the plaintiffs' failure to make a pre-suit demand on the corporation mandates dismissal of their claim. All other issues raised in this appeal are pretermitted.

The decision of the trial court is affirmed. Costs are to be taxed to the appellants, Ethel Hicks, et al., derivatively on behalf of Union Pacific Corporation, and their surety, for which execution may issue, if necessary.

---

8. The plaintiffs also claim that an exception to the demand requirement is found in Utah Code Annotated § 16–10a–740(3)(a)(ii)(B), which states that a derivative suit may not be commenced unless a written demand was made on the corporation and 90 days has passed, unless "irreparable injury to the corporation would result by waiting for the expiration of the 90–day period." Contrary to the plaintiffs' position, however, that provision is not an exception to the demand requirement. Rather, it is an exception to the 90–day wait period after such demand has been made.